Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LILY OF THE SKY, LLC, | Civil Action No. 24-5629 (SRC) |
| Plaintiff, | OPINION |
| v. | |
| JESSIKA JIMENEZ, a/k/a JESSIKA ARIZA | |
| Defendant. | |

**CHESLER**, District Judge

Before the Court is Plaintiff Lily of the Sky, LLC's motion for default judgment pursuant to Fed. R. Civ. P. 55(b), (D.E. No. 18). The motion is unopposed. Having considered Plaintiff's submission, the Court decides this matter without oral argument. See Fed. R. Civ. P. 78(b). For the reasons set forth below, Plaintiff's motion, (D.E. No. 18), is GRANTED.

**I.   BACKGROUND**

This case arises out of an allegedly fraudulent scheme orchestrated by Defendant Jessika Jimenez, a/k/a Jessika Ariza. Plaintiff Lily of the Sky, LLC, owned a private G650 aircraft ("the aircraft"). (D.E. No. 6 ("Am. Compl.") ¶ 2.) In 2016, Plaintiff contracted with Jet Aviation Business Jets AG (the "Provider" or "Jet Aviation"), which agreed to manage the aircraft

"including providing a flight crew, such as pilots and a cabin attendant." (Am. Compl. ¶ 3.) Plaintiff was responsible for paying any operating costs "relating to the operation and use of the [a]ircraft." (D.E. No. 32, Certification of Anthony Williams, ("Williams Cert.") ¶ 5.) Defendant was employed by the Provider to be a cabin attendant for the aircraft. (Am. Compl. ¶ 4.) Defendant's responsibilities included "aircraft preparation, catering, cabin appearance and cleanliness, service delivery, and on board equipment and stock." (Am. Compl. ¶ 28.) As part of Defendant's responsibilities as a cabin attendant, "when Defendant incurred business expenses for the use and benefit of the Plaintiff" she submitted requests for reimbursements to the Provider who in turn, invoiced Plaintiff for the expenses, which Plaintiff ultimately paid. (Am. Compl. ¶ 4.) Defendant utilized an American Express credit card for such purchases. (Williams Cert. ¶ 10.) Defendant was required to sign each Expense Report and certify that "all . . . expenses were on behalf of the [Provider] or its customers [*i.e.*, the Plaintiff]." (Am. Compl. ¶ 29.) According to Plaintiff, Defendant executed a fraudulent scheme "to trick and deceive Plaintiff." (Am. Compl. ¶ 1.) Plaintiff alleges that Defendant submitted "false and fraudulent Expense Reports and other documents to obtain money from Plaintiff to which she was not entitled." (Am. Compl. ¶ 5.) Specifically, Defendant fraudulently obtained reimbursement from Plaintiff by (i) submitting "sham" invoices for services not rendered to Plaintiff; (ii) submitting personal expenses unrelated to the operation of the aircraft; and (iii) obtaining refunds for expenses charged to and paid by Plaintiff.[1] (Am. Compl. ¶ 5; D.E. No. 31 ("Def.'s Br.") at 4.) As alleged in the Amended Complaint, "Defendant submitted false and fraudulent Expense Reports and other documents, concealed material facts, and made and used other incorrect statements or administrative errors to

---

[1] In the Amended Complaint, Plaintiff also alleges a duplicate expense scheme. (Am. Compl. ¶¶ 127-31.) Plaintiff has removed this category of expenses in its motion for default judgment, stating "subsequent analysis has determined that these expenses were included in the other schemes or not paid." (Def.'s Br. at 4 n.1.)

2

deceive Plaintiff into believing the expenses set forth therein were legitimate business expenses." (Am. Compl. ¶ 30.)

**Sham Invoice Scheme**

Plaintiff alleges that Defendant created two fictitious companies, Jet Luxury Limousine and Sky Cleaners Herrera. (Am. Compl. ¶¶ 32, 40.) These entities provided no legitimate services to Plaintiff, yet Defendant submitted fake invoices representing that these companies had provided services to the aircraft, which Plaintiff ultimately paid. (Am. Compl. ¶¶ 35, 43.) As submitted by Plaintiff, records from Block/Square appear to indicate that Defendant created a Square account in the name of "Jet Luxury Limousine" using her personal information including her name, date of birth, phone number and listed her New Jersey home address as the business address. (Def.'s Br. at 5; D.E. No. 27, Certification of Nicolas Femia ("Femia Cert.") ¶ 6f; D.E. No. 19-13.) Defendant then used her Amex Card to charge the Jet Luxury Limousine Square account and transferred the funds from Block into another account. (Id.) According to Plaintiff, Defendant then submitted fraudulent Expense Reports and fake Jet Luxury Limo invoices to Provider indicating that Jet Luxury Limousine provided transportation services on behalf of Plaintiff. (Am. Compl. ¶ 31.) Defendant allegedly also submitted false invoices representing that she had paid Jet Luxury Limousine through PayPal when in fact Defendant did not make any such payments through PayPal and according to PayPal, there are no records of any PayPal account in the name of Jet Luxury Limousine. (Def.'s Br. at 6; Femia Cert ¶ 6f; D.E. No. 19-12.) In total, Defendant's false Expense Reports and invoices to Plaintiff for services rendered by Jet Luxury Limo resulted in $227,290.00 in damages. (Def.'s Br. at 5; Femia Cert ¶¶ 4, 6; D.E. No. 19-25.)

Similarly, Defendant allegedly created a PayPal account in the name of "Sky Cleaners Herrera" using her personal information. (Femia Cert. ¶ 7f; D.E. No. 19-11.) According to

3

Plaintiff, Defendant would start a transaction to send money via PayPal to Sky Cleaners Herrera, which would generate an invoice. Defendant either did not complete the transaction or completed the transaction but later returned the money to her own account. (Def.'s Br. at 7.) As Defendant "represented that she paid these expenses with her own funds, Defendant directed the Provider to directly pay her" for Sky Cleaners Herrera expenses. (Am. Compl. ¶ 45.) In total, Plaintiff asserts that Defendant's false Expense Reports and invoices to Plaintiff for services rendered by Sky Cleaners Herrera resulted in $107,800 in damages. (Femia Cert. ¶¶ 4, 7a; D.E. No. 19-26.)

**Personal Expense Scheme**

As alleged in the Amended Complaint, Defendant also "knowingly submitted expenses that were personal in nature, unrelated to the [a]ircraft, and provided no use or benefit to Plaintiff with the intent that they would be reimbursed by Plaintiff." (Am. Compl. ¶ 124.) Indeed, Defendant submitted numerous Expense Reports and invoices and "certified and represented the expenses were on behalf of the Plaintiff" while such expenses "provided no use or benefit to Plaintiff." (Am. Compl. ¶¶ 49, 51.) The alleged personal expenses involved invoices from Mahwah VIP Limousine, Wayfair Inc., Hipnosis Tattoo Studio, State Farm Insurance, an Expense Report seeking reimbursement for expenses related to a real estate agent, various alcohol, food and drink purchases, rental cars, gasoline, hotels, EZ Pass, and Verizon and other utility services. (Am. Compl. ¶¶ 49-125.) For each category of expenses, Plaintiff details the type of transaction and states that Defendant "submitted numerous Expense Reports and corresponding invoices" and "certified and represented the expenses were on behalf of the Plaintiff" while such expenses incurred were in fact "personal in nature, unrelated to the [a]ircraft, and provided no use or benefit to Plaintiff." (See Am. Compl. ¶¶ 49-125.) For each category, Plaintiff provides an example of an expense and attaches a chart itemizing each fraudulent expense. (Id.)

For example, Plaintiff alleges that on or about October 9, 2021, Defendant "submitted a $2,322 Mahwah VIP Limousine invoice for a ten hour trip that included stops" throughout Linden, North Bergen, and Weehawken, New Jersey which was "personal in nature, unrelated to the [a]ircraft, and provided no use or benefit to Plaintiff" because "as set forth in the flight manifest, [the aircraft] was not in use by the Plaintiff on October 9, 2021." (Am. Compl. ¶ 51a.) Similarly, Plaintiff states that on February 20, 2021, "Defendant sought reimbursement and submitted a $694.11 February 20, 2021 invoice for a wine cooler which was delivered to her home address." (Am. Compl. ¶ 59.) Plaintiff also states that Defendant "submitted numerous Expense Reports for expenses she alleged to have incurred from State Farm Insurance" which was "for Defendant's personal vehicle." (Am. Compl. ¶ 69.)

**Defendant's Refund Scheme**

Plaintiff also alleges that Defendant obtained approximately $18,224.94 in a refund scheme where Defendant "received a refund for certain expenses that had been previously reimbursed by Plaintiff." (Am. Compl. ¶ 132; Def.'s Br. at 13.) Defendant allegedly incurred charges on her Amex card which she submitted in Expense Reports, and Plaintiff ultimately paid. (Am. Compl. ¶ 132.) "Defendant then caused those transactions to be reversed or canceled, resulting in a credit" to herself. (Def.'s Br. at 13; Am. Compl. ¶ 133.)

Plaintiff filed the instant action against Defendant on April 25, 2024, and filed an Amended Complaint on May 10, 2024. (D.E. Nos. 1, 6.) The Amended Complaint includes claims for: (i) common law fraud; (ii) negligent misrepresentation; and (iii) conversion. On May 14, 2024, Defendant was served with a copy of the Amended Complaint and Summons. (D.E. No. 10.) On June 11, 2024, Plaintiff requested an entry of default after Defendant failed to file an answer or otherwise appear in this action, which the Clerk of the Court granted. (D.E. No. 11.) On November

1, 2024, Plaintiff filed the instant motion for default judgment against Defendant seeking $502,019.72 in damages. (D.E. Nos. 18, 31.)

## II. LEGAL STANDARD

Following an entry of default under Rule 55(a), "Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to a file a timely responsive pleading." Chanel v. Gordashevsky, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (citing Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990)).

Before entering default judgment, the court must determine whether it has jurisdiction over both the subject matter and the parties. See Ho v. Pholicious Inc., 2018 WL 2095597, at *2 (D.N.J. May 7, 2018). The court must also ensure that the defendant was properly served. See Gold Kist, Inc. v. Laurinburg Oil Co., 756 F.2d 14, 19 (3d Cir. 1985). Next, the court must ensure that "the unchallenged facts" in the complaint give rise to a "legitimate cause of action." Chanel, 558 F. Supp. 2d at 536. Next, the court determines whether default judgment is appropriate by analyzing three factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000); see also United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984). On a motion for default judgment, the court may "accept as true the well-pleaded factual allegations of the complaint, but the court need not accept the moving party's legal conclusions or allegations relating to the amount of damages." Polidoro v. Saluti, 675 Fed. Appx. 189, 190 (3d Cir. 2017).

## III. DISCUSSION

### a. Jurisdiction, Service of Process, and Entry of Default

Here, the Court has subject-matter jurisdiction over the case pursuant to 28 U.S.C. § 1332 because Plaintiff alleges that for purposes of diversity jurisdiction, it is an LLC whose sole member is a traditional trust and the only trustee is a citizen of New York. (Am. Compl. ¶¶ 8-13.) Plaintiff further alleges that Defendant is a natural person and citizen of New Jersey and the amount in controversy exceeds $75,000. (Am. Compl. ¶¶ 15-16.) Thus, the Court has diversity jurisdiction because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000. The Court also has personal jurisdiction over Defendant because she resides in New Jersey. (Am. Compl. ¶ 21; see also Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile.").) Furthermore, Plaintiff has adequately effectuated service. Under Rule 4(e)(2)(B), service may be made on an individual by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2)(B). Here, Plaintiff filed an affidavit of service indicating that a process server served a copy of the Summons and Amended Complaint on May 14, 2024 to Adriana Jimenez, Plaintiff's adult sister, at Plaintiff's dwelling in New Jersey. (D.E. No. 10.) Defendant has neither filed an answer nor otherwise appeared in this litigation and the Clerk of the Court properly entered default against Defendant on June 12, 2024.

### b. Plaintiff's Causes of Action

Next, the court must ensure that "the unchallenged facts" in the complaint give rise to a "legitimate cause of action." Chanel, 558 F. Supp. 2d at 536. Plaintiff seeks default judgment on all three claims of (i) common law fraud; (ii) negligent misrepresentation; and (iii) conversion.

### i. Common Law Fraud

The Court finds that Plaintiff has sufficiently stated a cause of action for common law fraud. The elements for a claim of common law fraud under New Jersey law are "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Schenkel v. Flaster, 54 Fed. Appx. 362, 364 (3d Cir. 2002) (citing Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367 (N.J. 1997)). Under the heightened pleading standard of Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).

Here, Plaintiff has sufficiently alleged that Defendant engaged in an extensive fraudulent scheme involving numerous material misrepresentations that services billed to Plaintiff were legitimate. Plaintiff alleges that Defendant created two fictitious companies, Jet Luxury Limousine and Sky Cleaners Herrera, and produced fake invoices for services never rendered by these entities, which were submitted to and paid by Plaintiff. By doing so, Plaintiff alleges that "Defendant repeatedly made numerous material misrepresentations that she knew were false, and she intended Plaintiff to rely on them." (Def.'s Br. at 17.) These fabricated entities "provided no legitimate services to Plaintiff" and Defendant submitted "sham" invoices to the Provider "with knowledge of their falsity." (Am. Compl. ¶¶ 32, 35, 43.) The Amended Complaint alleges that Defendant represented to Plaintiff that the credit card charges and invoices were legitimate transactions, but such representations were false because Plaintiff orchestrated a scheme to

8

represent that "she paid these expenses with her own funds, Defendant directed the Provider to directly pay her" for such expenses and Plaintiff later paid these expenses. (Am. Compl. ¶¶ 37, 45.) Plaintiff alleges that it was not aware of the scheme and reasonably relied on the accuracy of the Expense Reports to its detriment. (Am. Compl. ¶¶ 141, 142; Def.'s Br. at 17.) As a result, Plaintiff suffered damages of $227,290 relating to Jet Luxury Limousine and $107,800 in damages relating to Sky Cleaners Herrera. (Def.'s Br. at 5-8.)

As it relates to Defendant's personal expense scheme and refund scheme, Plaintiff alleges that Defendant incurred expenses and later "caused the item for which the expense was incurred to be refunded, resulting in a credit to Defendant" while knowingly submitting these expenses on Expense Reports to Provider, which were ultimately paid by Plaintiff and resulting in damages of $18,224.94. (Am. Compl. ¶¶ 132-33; Def.'s Br. at 13.) Similarly, Plaintiff alleges that Defendant made a material misrepresentation of fact when she "knowingly submitted expenses that were personal in nature, unrelated to the [a]ircraft, and provided no use or benefit to Plaintiff with the intent that they would be reimbursed by Plaintiff." (Am. Compl. ¶ 124.) For example, Plaintiff alleges that on May 5, 2021, "Defendant expensed a hotel stay at the W Hoboken . . . which is located in close proximity to her home, in the amount of $1,054.37" during which time the aircraft was not in use. (Am. Compl. ¶ 108b.)

The affidavits submitted by Plaintiff provides further support. In support of the motion for default judgment, Plaintiff submits charts for each category of expenses noting the exact date of the transaction, the expense amount, and the circumstances surrounding the alleged misrepresentation. (See D.E. Nos. 19-25–19-39). Plaintiff alleges that each expense submitted in Expense Reports by Defendant "for reimbursement [were made] with knowledge of their falsity, namely [that] they related to personal expenses for her benefit while representing the expenses

9

were made on behalf of the Plaintiff." (Am. Compl. ¶ 109.) Furthermore, as set forth in the certification of Christof Hamm, one of the two primary passengers of the aircraft and beneficiary of the trust which is the sole member of Plaintiff, these misrepresentations were material in light of his statement that Defendant "submitted numerous expenses that [he] was neither aware of nor requested as a passenger" of the aircraft and there would be no reason for certain expenses to be incurred that were not for the benefit of the aircraft. (D.E. No. 26, Certification of Christof Hamm ("Hamm. Cert.") ¶ 4.) For example, Mr. Hamm states that there "would be no legitimate reason to expense transportation or limousine services when the [a]ircraft was not in use or operation." (Hamm. Cert. ¶ 4a.) Similarly, as it relates to the expenses from Hipnosis Tattoo Studio, Mr. Hamm states that he has "never heard of this studio, and it provided no services" to him or the other primary passenger of the aircraft. (Hamm. Cert. ¶ 4d.)

In short, the Expense Reports were submitted with Defendant's knowledge that the invoices were false and made with the intention that Plaintiff rely and make payment upon them. Plaintiff further explains it reasonably relied on Defendant's invoices and Expense Reports in disbursing payment to Provider. (Am. Compl. ¶ 139-42.) The Court finds that Plaintiff reasonably relied on Defendant's false statements to its detriment, as evidenced by Plaintiff's payments to Provider which Plaintiff believed to be reimbursements for Defendant's non-personal expenses, and Plaintiff's allegations of fraud are sufficient to meet Rule 9(b)'s heightened pleading standard.

### ii. Negligent Misrepresentation

Plaintiff has also sufficiently alleged a claim for negligent misrepresentation. "To establish a claim for negligent misrepresentation, a plaintiff must establish that (1) a false statement, (2) was negligently made, (3) plaintiff justifiably relied on that statement, and (4) suffered economic loss or injury because of the reliance." Eberhart v. LG Elecs. USA, Inc., 188 F. Supp. 3d 401, 409

(D.N.J. 2016) (citing Wiatt v. Winston & Strawn LLP, 838 F.Supp.2d 296, 312 (D.N.J.2012)). The "actual receipt and consideration of any misstatement remains central to the case of any plaintiff seeking to prove that he or she was deceived by the misstatement or omission." Barows v. Chase Manhattan Mortg. Corp., 465 F. Supp. 2d 347, 367 (D.N.J. 2006) (quoting Kaufman v. i-Stat Corp., 754 A.2d 1188, 1195–96 (NJ 2000)).

For the same reasons set forth in support of Plaintiff's claim for fraud, the Court finds that the Amended Complaint adequately pleads a claim for negligent misrepresentation based on Defendant's affirmative misrepresentations. The Amended Complaint identifies multiple allegedly false statements as evidenced by Defendant's Expense Reports for invoices relating to Jet Luxury Limousine and Sky Cleaners Herrera as well as invoices for personal expenses and expenses which Plaintiff later received a refund for. Plaintiff alleges that "at a bare minimum, Defendant was negligent in making these untrue statements" and Plaintiff justifiably relied on such statements to its detriment and suffered economic loss by paying Provider for the expenses submitted by Defendant. (Def.'s Br. at 20; Am. Compl. ¶¶ 143-146.) Thus, Plaintiff has sufficiently alleged a claim for negligent misrepresentation.

### iii. Conversion

Plaintiff has also sufficiently alleged a claim for conversion. The elements of a claim of conversion are "(1) the existence of property, (2) the right to immediate possession thereof belonging to [the] plaintiff, and (3) the wrongful interference with that right by [the] defendant." Austar Int'l Ltd. v. AustarPharma LLC, 425 F. Supp. 3d 336, 357 (D.N.J. 2019) (quoting Capital Health Sys. v. Veznedaroglu, 2017 WL 751855, at *10 (D.N.J. Feb. 27, 2017)). Here, Plaintiff alleges that it lawfully possessed its monies and through the various fraudulent schemes described above, Defendant "perpetuated wrongful acts and improperly interfered with Plaintiff's possession

11

of its monies" for her own use and benefit by receiving payment for services which were never rendered to Plaintiff, purchasing items for personal use while falsely and knowingly certifying that such expenses were for the benefit of Plaintiff, and receiving refunds for items purchased on her Amex Card which she later returned or cancelled to receive a credit. (Am. Compl. ¶¶ 147-50.) Defendant's alleged conduct constitutes conversion as Plaintiff further states that it was the rightful possessor and owner of funds used by Defendant to make certain credit card purchases and by "engaging in her schemes and submitting these false and fraudulent documents, Defendant wrongfully interfered with Plaintiff's right to its funds" and as a result, Plaintiff was damaged by ultimately paying for such expenses. (Def.'s Br. at 22.)

### c. Whether Default Judgment is Appropriate

Next, the Court weighs the following three factors to determine whether default judgment is appropriate: (i) prejudice to plaintiff; (ii) the existence of a meritorious defense; and (iii) whether Defendant's delay is the result of culpable conduct. See Chamberlain, 210 F.3d at 164. As to the first factor, "[p]rejudice occurs where a plaintiff's ability to pursue its claim is impaired." Gov't Emps. Ins. Co. v. Hamilton Health Care Ctr. P.C., 2018 WL 1226105, at *6 (D.N.J. Mar. 9, 2018) (citing Feliciano v. Reliant Tooling Co., 691 F.2d 653, 657 (3d Cir. 1982)).

Here, Plaintiff will be prejudiced if default judgment is not granted. Despite her awareness of the instant lawsuit, Defendant has failed to appear in this action. Defendant's continued failure to appear will leave Plaintiff without recourse and Plaintiff has no other means to recover damages from Defendant. Since late 2021 and through the Fall of 2022, the trustee of the Lily of the Sky Trust, which paid for the expenses incurred by Plaintiff, "repeatedly requested that [Defendant] provide details about her [American Express] charges." (Williams Cert. ¶ 12.) Despite repeated requests, Defendant failed to provide the requested details to the trustee. (Id.) In short, absent a

12

grant of default judgment, Plaintiff will have no other means to vindicate its claims. Second, as Defendant has failed to file any responsive pleading or appear in this matter thus far, the Court cannot ascertain the existence of any meritorious defense. "If the defendant does not respond, the Court cannot determine whether the defendant has any meritorious defenses, and the factor points in favor of granting default judgment against the defendant." Barrett v. Tri-Coast Pharmacy, Inc., 518 F. Supp. 3d 810, 829 (D.N.J. 2021) (citing Teamsters Health & Welfare Fund of Philadelphia v. Dubin Paper Co., 2012 WL 3018062, at *4 (D.N.J. July 24, 2012)). Third, the Court finds that Defendant's delay is due to culpable conduct. Defendant appears to have acknowledged receipt of the Summons and Complaint and was aware of the instant litigation. On October 4, 2024, counsel for Plaintiff emailed Defendant in response to a missed call from Defendant. Defendant acknowledged that she was aware of the lawsuit pending against her, had consulted various attorneys, and was given a link to PACER to access court documents. (D.E. No. 19, Certification of Anthony Moscato, ("Moscato Cert.") ¶ 9; D.E. No. 25-104.) Despite her awareness of the lawsuit, Defendant has failed to file any responsive pleading or appear in this matter thus far. In short, Defendant's delay is due to her own conduct. Considering all three factors, the Court finds that Plaintiff is entitled to default judgment.

### d. Damages

Having found that Plaintiff is entitled to default judgment on all counts, the Court must now determine whether an award of damages is appropriate based on Plaintiff's submissions to the Court. A court may "conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to . . . determine the amount of damages" a plaintiff is entitled to. Fed. R. Civ. P. 55(b)(2). Plaintiff seeks damages in the amount of $502,019.72 as well as pre-judgment interest and post-judgment interest and costs.

In support of its claim for damages in the amount of $502,019.72, Plaintiff submits to the Court, individual charts of damages itemizing allegedly fraudulent expenses across 15 categories, along with copies of invoices submitted by Defendant and receipt of payment issued by Plaintiff. (Femia Cert. ¶¶4-20; D.E. Nos. 19-25–19-39.)  These charts were prepared by Nicholas Femia, CPA, following his review of records from Jet Aviation Services, Giannone Wines & Liquor, Bank of America, JP Morgan Chase, American Express, PayPal, and Block/Square.  (Femia Cert. ¶ 2.) The detailed charts and summaries of specific expenses correspond to Plaintiff's allegations in the Amended Complaint, namely that the expenses were not in connection with managing the aircraft. Each chart contains the Jet Aviation Invoice number and date submitted to Plaintiff, the receipt for each transaction, the date and invoice number of reimbursement issued by Plaintiff, and a description of the transaction as it relates to Defendant's fraudulent activity.

For example, Plaintiff's chart from Mahwah VIP Limousine indicates that on January 26, 2020, Defendant invoiced a $600 receipt from Mahwah VIP Limousine.  (D.E. No. 19-27 at 3.) The description from Block/Square records of Mahwah VIP Limousine indicate that the trip ran from Weehawken, NJ to Queens, NY for a duration of 5 hours and 15 minutes.  Defendant expensed this item on a February 5, 2020 Expense Report to the Provider which appeared on Jet Aviation's invoice to Plaintiff on June 26, 2020, and Plaintiff paid Jet Aviation for this expense on August 10, 2020.  (D.E. No. 19-27 at 3.)  However, as noted in the chart, the aircraft was not in operation in January 2020, the date in which Defendant incurred the expense from Mahwah VIP Limousine. (Id.)  As noted in his Certification, Christoff Hamm, one of the primary passengers of the aircraft and beneficiary of the Lily of the Sky Trust, states there "would be no legitimate reason to expense transportation or limousine services when the [a]ircraft was not in use or operation." (Hamm. Cert. ¶ 4a.)

By way of another example, the Alcohol Purchases chart indicates that on January 8, 2021, Defendant used her Amex Card to purchase six bottles of Clase Azul Reposado Tequila in the amount of $961.81.  (D.E. No. 19-32 at 2-3.)  Defendant expensed this amount on an Expense Report which Plaintiff ultimately paid in March 2021.  (Id.)  The chart indicates that the aircraft was not in operation in January or February of 2021.  (Id.)  As noted in his Certification, Mr. Hamm further states that he "never requested [Defendant] to purchase large quantities of tequila . . . and never observed such alcohol" on the aircraft.  (Hamm Cert. ¶ 4b.)  Mr. Hamm certifies that there "would be no legitimate reason for [Defendant] to expense large quantities of alcohol when the [a]ircraft was not in operation."  (Id.)

Furthermore, each itemized expense as noted in the individual charts is supported by copies of invoices from vendors, Expense Reports submitted by Jet Aviation, reimbursement of payment made by Plaintiff to Provider, and other necessary supporting documentation attached as exhibits to Plaintiff's motion.  (See D.E. Nos. 19-25.)

The Court is satisfied that these detailed submissions and the allegations set forth in the Amended Complaint are sufficient to constitute a claim for default judgment in the amount of $502,019.72 for all counts.  This amount incorporates the damages for the following categories as indicated in the exhibits submitted to the Court: Jet Luxury Limousine in the amount of $227,290.00; Sky Cleaners Herrera in the amount of $107,800.00; Mahwah VIP Limousine in the amount of $23,762.50; Wayfair Inc. in the amount of $1,776.32; Hipnosis Tattoo Studio in the amount of $11,726.79; State Farm Insurance in the amount of $12,092.51; Real Estate Agent in the amount of $4,322.10; Alcohol Purchases in the amount of $17,337.31; Food Expenses in the amount of $21,467.49; Rental Car in the amount of $13,492.41; Gasoline in the amount of $1,292.33; Hotels in the amount of $10,583.03; EZ Pass in the amount of $4,198.25 Verizon and

Other Utilities in the amount of $26,653.74; and credit refunds for previously reimbursed expenses in the amount of $18,224.94. (Femia Cert. ¶ 4.)

Plaintiff also seeks pre-judgment interest pursuant to N.J. Court Rule 4:42–11(b) and post-judgment interest pursuant to 28 U.S.C. § 1961, as well as $405 in costs associated with filing the Amended Complaint. (Moscato Cert. ¶¶ 2, 11). Federal courts sitting in diversity apply state law as it relates to pre-judgment interest. See United States for Use of Colorado Custom Rock Corp. v. G&C Fab-Con, LLC, 2024 WL 4356306, at *12 (D.N.J. Oct. 1, 2024). Here, "the award of prejudgment interest is governed by New Jersey law." Gleason v. Norwest Mortg., Inc., 253 F. App'x 198, 203-04 (3d Cir. 2007).

N.J. Court Rule 4:42–11(b), provides:

> [E]xcept as otherwise provided by law, the court shall, in tort actions, . . . include in the judgment simple interest, calculated as hereafter provided, from the date of the institution of the action or from a date 6 months after the date the cause of action arises, whichever is later, provided that in exceptional cases the court may suspend the running of such prejudgment interest . . .

N.J. Ct. R. 4:42–11(b).

For post-judgment interest under 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." The Court finds that $405 in costs as well as pre-judgment interest and post-judgment interest in the instant matter are proper. The Court will award pre-judgment interest for the period starting from the date that Defendant was formally served with process, May 14, 2024, until the date upon which the Court issues this Opinion and Judgment granting Plaintiff's motion for default judgment. Pre-judgment interest is to be calculated pursuant to New Jersey Rule 4:42-11(b). Plaintiff is further entitled to post-judgment interest, calculated pursuant to 28 U.S.C. § 1961, from the date of this judgment until it is paid. Plaintiff shall have seven days to submit an Order for the Court's signature detailing the

appropriate pre-judgment interest rate and the precise amount due as well as the rate for post-judgment interest.

### IV.    CONCLUSION

For these reasons, **IT IS** on this 13th day of January, 2025, **ORDERED** that Plaintiff's motion for default judgment, (D.E. No. 18), is hereby **GRANTED.** An appropriate Judgment will follow.

                                                s/Stanley R. Chesler
                                      STANLEY R. CHESLER, U.S.D.J.

Dated: January 13, 2025